Argued December 4, 1958, reversed and remanded January 7, 1959

## OREGON MUTUAL FIRE INSURANCE COMPANY ET AL *v.* MATHIS

334 P. 2d 186

*H. W. Devlin*, McMinnville, argued the cause for appellants. On the brief were Nott, Cummins and Devlin, McMinnville.

*Sam F. Speerstra*, Salem, argued the cause for respondent. On the brief were Williams & Skopil and Rhoten, Rhoten & Speerstra, Salem.

Before PERRY, Chief Justice*, and ROSSMAN, McALLISTER** and O'CONNELL, Justices.

### PERRY, J.

The plaintiffs, as subrogees of Yamhill County, brought this action to recover damages by fire to the county courthouse, due to the alleged negligence of the defendant.

After all of the evidence had been introduced by the parties, the trial court directed the jury to return a verdict for the defendant. From the judgment entered on this verdict, the plaintiffs appeal.

The plaintiffs' sole assignment of error is the action of the trial court in directing a verdict for defendant.

---

* Chief Justice when case argued.
** Chief Justice when this decision was rendered.

■ The trial court ruled that the evidence was insufficient to raise a question of fact, to be determined by the jury, as to negligence or non-negligence of the defendant. Since the defendant's motion to direct a verdict included other grounds than the one ascribed by the trial court for its action, it is necessary to consider each ground of the motion. *Short v. D. R. B. Logging Co.*, 192 Or 383, 232 P2d 70, 235 P2d 340; *Bohart v. Parker,* 76 Or 371, 147 P 188, 149 P 85; 3 Am Jur 370, Appeal and Error § 828.

The grounds of defendant's motion are as follows:

(1) That the evidence fails to disclose any negligence on the part of the defendant which resulted in damage to the plaintiffs.

(2) That prior to the alleged tort of the defendant, the county of Yamhill had executed an instrument for the purpose of releasing the defendant from damages arising from a loss by fire.

(3) There was no satisfactory evidence of the loss sufficient to submit the question of damages to a jury.

The facts most favorable to the plaintiffs are as follows: In August or September, 1954, Yamhill County entered into a written agreement with defendant whereby defendant agreed to roof its courthouse. This agreement provided "The contractor shall not be responsible for delays or damages due to strikes, fire, accidents or causes beyond his reasonable control, or for damage to the interior of the building."

The evidence discloses that on September 9, 1954, defendant was engaged in carrying out his agreement with the county. His work required the spreading of hot asphalt upon the roof of the building. A solid form of asphalt was heated to a liquid in a kettle on the ground, and in liquid form was transferred into a bucket and carried to the roof by a hoist. The liquid

asphalt was then applied to the roof by dipping a fiberglass mop into the bucket and spreading it about on the roof. Asphalt, being volatile, will ignite and burn when overheated. It becomes liquid at about 195 degrees and will sometimes ignite at 400 to 450 degrees; that a recommended safe temperature is not over 425 degrees.

Witnesses testified a fire was first noticed in the kettle where the cold asphalt was being melted; that immediately before the fire commenced on the roof the asphalt in a bucket that had been raised to the roof was on fire. An attempt was made to extinguish this fire in the bucket. A mop was then placed in the bucket and when withdrawn the mop was afire and the fire spread to the roof. This fire could not be extinguished before the building had been damaged.

■ It is apparent from a mere statement of the facts that the question of whether or not the defendant was negligent in overheating and applying the overheated asphalt to the roof, thus causing the fire, was a question of fact to be determined by the jury.

■ Also, one of defendant's own witnesses testified that "It would be better if you would have a fire extinguisher on the roof." The evidence discloses the defendant did not have a fire extinguisher on the roof, thus raising a question of fact as to whether or not the defendant, as a reasonably prudent person, had, under the circumstances, taken reasonable precautions in doing this work to prevent a reasonably to be anticipated fire from damaging the courthouse.

We are of the opinion the trial court erred in sustaining defendant's motion upon this ground.

■ We are also of the opinion that defendant cannot rely upon the terms of the contract as a release for his alleged tortious acts. The wording of the contract

speaks only of injuries through causes not under defendant's control. If he was negligent, then he failed to act as a reasonably prudent person over matters under his control. The method and means of carrying out his contract with the county was exclusively within the control of defendant. If he was negligent and his negligence was the proximate cause of the damage to the building this clause of the contract cannot be construed to release him from liability.

The third ground of defendant's motion is likewise insufficient to justify and sustain the trial court's direction of a verdict for the defendant.

This basis of defendant's contention, not briefed, seems to be that the plaintiffs failed to introduce any evidence whereby the jury could properly measure the monetary loss suffered through defendant's negligence.

Neither plaintiffs nor defendant attempt to aid this court in determining what true measurement should be applied in determining just compensation for an injury involving the partial destruction of a building. If it were not for the fact that this case must be returned to the trial court to be retried, we would be inclined to ignore this issue.

"While the fundamental rule of the law is to award compensation, yet rules for ascertaining the amount of compensation to be awarded are formed with reference to the just rights of both parties, and the standard fixed for estimating damages ought to be determined not only by what might be right for an injured person to receive in order to afford just compensation, but also by what is just to compel the other party to pay: * * *." *Hansen v. Oregon-Wash. R. & N. Co.*, 97 Or. 190, 201, 188 P 963, 191 P 655.

See also *Title & Trust Co. v. U. S. Fid. & Guar. Co.,* 138 Or 467, 1 P2d 1100, 7 P2d 805.

In *Olds v. Von Der Hellen et al.,* 127 Or 276, 263 P 907, 270 P 497, a building was totally destroyed through negligence of the defendant. The building, a wooden structure ten years of age, had been constructed as a depot for a then non-existent railroad. Evidence was introduced of the replacement cost and the percentage depreciation of the building since its construction. We said, p. 288:

> "We think that, in adopting this measure of damage, the court applied a wrong principle of law and failed to consider other factors which should have entered into the determination of its value. The building was a wooden structure ten years of age and had been built as a railroad depot and for railroad purposes only. The railroad was not in operation and had not been completely constructed and there was nothing to show that there was any likelihood that the building would ever be serviceable for railroad purposes. It was situate at a remote point from any operating railroad and near a very small village and there was nothing to show that the building had any rental value for any purpose. We think that these circumstances should have been considered in determining the question of value."

It appears, therefore, that under the particular facts of that case the damages for total destruction were to be established by proof of the value of the building immediately before and immediately after injury.

We have found no cases in this jurisdiction which deal with the partial destruction of a building capable of repair.

■ It appears that, since the allowance of damages is to award just compensation without enrichment,

there is no universal test for determining the value of property injured or destroyed and that the mode and amount of proof must be adapted to the facts of each case. 4 Sutherland Damages (4th ed) 3748, § 1015.

McCormick on Damages, Hornbook series, ch 20, at page 482, states:

"For completed invasions, injuries, or trespasses, the most usual formula of compensation is to the effect that the owner may recover the amount of the decrease in value of the land affected, caused by the invasion. There are, however, several alternatives to this simple formula, each of which may be resorted to when more appropriate than the normal test of diminution in value. In the case of injury to some structure or improvement upon the land, such as buildings, fences, or wells, there are several methods of measurement available. First, if the improvement is destroyed, and may readily be treated as a unit in itself, apart from the land, as in case of a house or other building, the value of the improvement itself at the time of its destruction is usually taken as the basis of compensation, and, in ascertaining this value, the original cost or the cost of replacement, with allowance for depreciation, may be considered. Second, if the improvement is merely damaged and not destroyed, damages are usually measured by the reasonable cost of repair or restoration to the condition before the injury, together with compensation for the loss of the use of the property during the period of repair. * * *"

See also 25 CJS 603-604, Damages, § 84.

■ It must be apparent to all that a building designed and constructed in 1888 to be used and used as a courthouse would have no general market value. Therefore, other evidence is necessary to establish value.

The plaintiffs offered to and did show the estimated and, in some instances, the cost of restoring the building to its former condition.

■ Where the injury to real property is merely temporary, or where the property can be restored to its original condition, the measure of damages may be, or should include, the cost of restoration, as where the injury is susceptible of remedy at a moderate expense and the cost of restoration may be shown with reasonable certainty, or where the cost of restoration is less than the diminution in the value of the property. This is particularly true where the adoption of the difference in value as the measure of damages would be difficult and uncertain, or where the injury is not so much to the land itself as to improvements thereon. The recovery is limited to the cost of restoring the premises to their original condition and not to that of placing them in better condition than they were in originally. The cost of restoration, however, cannot be adopted, where the cost of restoring the property would exceed the value thereof, or the actual damage sustained by plaintiff, or where restoration is impracticable." 25 CJS 604, Damages § 84.

■ Under the circumstances of this case, where the cost of repair is far less than the reasonable value of the building, we are of the opinion that justice would be served by permitting plaintiffs to show the monetary cost of putting the building back in the same state of repair as it was prior to injury.

Judgment reversed and a new trial ordered.