Argued and submitted April 6, modified May 19, 1971

JOHNSON ET AL, *Respondents and Cross-Appellants,*
*v.* NORTHWEST ACCEPTANCE CORPORATION,
*Appellant and Cross-Respondent.*
485 P2d 12

James M. Burns, Judge.

*Dennis F. Todd,* Portland, argued the cause for appellant and cross-respondent. With him on the briefs were Richard M. Sandvik and Smith, Todd & Ball, P.C., Portland.

*Denton G. Burdick, Jr.,* Portland, argued the cause for respondents and cross-appellants. With him on the brief were Frank H. Hilton, Jr., and Hutchinson, Schwab & Burdick, Portland.

Before McAllister, Presiding Justice, and

DENECKE, HOLMAN, TONGUE, HOWELL and BRYSON, Justices.

## DENECKE, J.

This appeal is from a judgment for plaintiffs after a trial to the court on an action for damages arising from the breach of a lease agreement.

In 1965 plaintiffs owned the land and building on the corner of S. W. Main and Broadway Streets in Portland, Oregon. Ed Lee, Inc., leased the property and operated a night club on the premises. Defendant made a substantial loan to the lessee and as security held an interest in certain fixtures and equipment in the building. As additional security defendant obtained from Ed Lee, Inc., an assignment of its lease. It also secured from plaintiffs a consent to the assignment of the lease and a release and waiver of any interest in the fixtures and equipment used as collateral.

By December 1965 Ed Lee, Inc., was in default on both the lease and its loan obligation with defendant. Defendant closed the premises on December 7, 1965, and gave notice of its intent to conduct a sale under ORS Chapter 79 to foreclose its security interest. Plaintiffs wrote to defendant on December 14, 1965, and stated that under the terms of the consent to assignment defendant was liable for the fair rental value of the premises as long as it controlled the building. Defendant then held the sale and purchased the collateral for $10,000.

Subsequently plaintiffs offered to waive any rent obligation so long as defendant would leave the equipment and fixtures in the building. Plaintiffs made this

request in order to facilitate reletting the premises as a "complete package" to a new tenant. Defendant agreed. There followed a number of serious but unsuccessful attempts to relet. Finally on April 12, 1966, defendant notified plaintiffs that it could no longer cooperate in attempts to relet and that it intended to conduct an auction on the premises to dispose of its property. Plaintiffs then made a second demand for rent commencing April 13, 1966, "at the rent specified in the lease."

As the date of the auction approached plaintiffs sought and received assurances that defendant would only sell its property and not any of that belonging to plaintiffs. Defendant held the auction in late May. The keys to the premises, however, were not returned to plaintiffs until July 12, 1966.

Plaintiffs commenced this action in early 1967. The final complaint stated a count for rent and a count for waste. The trial court awarded $3,000 in back rent, $29,448 in damages for waste and $8,000 in attorneys' fees based on a prevailing party provision in the lease.

1. The first assignment of error we will consider concerns the award of attorneys' fees. The trial court in its oral decision stated that plaintiffs were entitled to attorneys' fees because a landlord-tenant relationship existed between April 13 and July 12, 1966. In its Conclusions of Law the court based the award on paragraph 31 of the lease which allowed the prevailing party to recover attorneys' fees in actions arising under the lease. The trial court apparently concluded that because defendant was a tenant all the provisions of the lease applied.

We do not agree with this conclusion in light

of the clear meaning of the consent to assignment executed by plaintiffs. It stated in part:

"The undersigned hereby consent to the attached assignment from Ed Lee, Incorporated to Northwest Acceptance Corporation as Assignee, and agree that so long as said Assignee has not exercised dominion over the premises covered by said lease of July 16, 1965, for the purpose of operating the business of Ed Lee, Incorporated, or other business, Assignee shall not be liable for rent or for any other obligation of the original tenants or of Ed Lee, Incorporated, on account of said lease, provided, however, that Assignee shall in all events be liable for the fair rental value of such premises, as established by said lease, during any period during which Assignee shall exercise dominion over such premises for any purpose whatever."

We interpret this language to mean that defendant was to be subject to the covenant for rent and the other provisions of the lease if it used the premises for the same business as Ed Lee, Inc., or for some other business, but if defendant used the premises for any other purpose it would only be liable "for the fair rental value of such premises, as established by said lease." In this case it is established that defendant did not use the premises for a night club or any other business but rather only to store and auction personal property. It follows, therefore, that under the terms of the consent paragraph 31 of the lease should not apply.

Plaintiffs' principal argument in support of the attorneys' fees is that defendant stipulated that the court could award them as provided in paragraph 31 of the lease. It is true that in the opening moments of trial defendant made the following statement:

"MR. SMITH: Your Honor, we have a two-

away [sic] attorney fee provision in the lease, which I would suggest at this time, if it is agreeable to Mr. Campbell, we stipulate that the Court set reasonable attorneys' fees as it sees fit, and that would eliminate the need to amend either of the pleadings."

Defendant made this statement as plaintiffs were attempting to amend the second amended complaint to provide for attorneys' fees. It is apparent from the final phrase that defendant made the stipulation in an attempt to facilitate the proposed amendment. The problem is to determine the precise extent of the stipulation.

2. It is well recognized that the language of a stipulation, whether it be an agreed statement of facts or related to other matters, will not be so construed as to give it the effect of a waiver of a right not plainly intended to be relinquished. *Highway Com. v. Feves*, 228 Or 273, 284-285, 365 P2d 97 (1961). Under this rule of construction plaintiffs must establish that defendant plainly intended to waive its defense that paragraph 31 of the lease did not apply in this case.

3. As noted defendant's immediate reason for making the stipulation was to facilitate the proposed amendment. This purpose suggests that defendant was not intending to settle any legal questions concerning the application of the documents involved in the case, but rather was only attempting to help dispose of preliminary matters. Moreover, a few minutes later during opening statement defendant argued specifically that it was not subject to any obligations under the lease because of the consent to assignment. It is difficult to reconcile this argument with the suggested interpretation of the stipulation. Finally the trial

judge on the day he gave his verdict characterized the stipulation as allowing the judge to decide the amount to be awarded without expert testimony provided attorneys' fees were to be awarded. Plaintiffs agreed with the judge's characterization. The fact that there was some question as to whether attorneys' fees were to be given indicates that the judge did not interpret defendant's statement as a concession that paragraph 31 applied. For these reasons we conclude that defendant's oral, in-court statement should be construed to stipulate only that if the full lease applied then the court could award the prevailing party attorneys' fees pursuant to paragraph 31. Since we have determined that under the consent agreement paragraph 31 did not apply in this case it was error to award attorneys' fees.

4. The next specification concerns the adequacy of the complaint. Part of the damages awarded for waste included the cost of replacement of plaintiffs' fixtures removed by defendant. Defendant concedes the recovery is proper in an action for waste but contends that plaintiffs did not allege this injury and it was, therefore, improper to award damages.

In the original complaint plaintiffs had a count alleging the wrongful sale of their property and another count for damage to the premises. The amended complaint dropped the count for wrongful sale. Paragraphs V and VI of the second cause of action in the amended complaint stated:

"V.

"During its occupancy of the said premises from April 13 to July 16, 1966, defendant prepared for sale and sold personal property and fixtures from the said premises.

"VI.

"In the course of preparing for and selling the said personal property and fixtures, defendant ripped, tore and cut away many of said fixtures from the partitions, floors, ceilings and walls of said building, and extensively damaged the partitions, floors, ceilings and walls and failed to repair said damage as they were required to do by the terms of said lease, to plaintiffs' damage in the amount of $14,500.00. The reasonable cost of repairing said damages is $14,500.00."

While these allegations did mention ripping, cutting away and selling fixtures, they did not specify that the fixtures sold belonged to plaintiffs.

The morning of trial plaintiffs moved to amend the complaint by increasing the damages for waste to $30,000 and adding a claim for attorneys' fees. At this time plaintiffs specified that they intended to seek recovery both for damage to the building and for the cost of replacement of certain fixtures. Defendant maintained that it had not prepared on the question of replacement costs. The court, noting the case was not before a jury, allowed the prayer to be increased and stated that if defendant needed more time at the conclusion of the testimony it would be given. The defendant objected to the introduction of evidence for these damages repeatedly during trial. However, the evidence was received. In defendant's case it called Mr. Robert Smith as its witness. Mr. Smith made an item-by-item evaluation of the missing fixtures and his figures were much less than plaintiffs' witness. At the end of the trial defendant did not formally seek more time to develop further evidence although it did introduce additional exhibits concerning the value of the fixtures at a special hearing two months after trial.

In reaching his decision the trial judge stated specifically that Mr. Smith's testimony was important to him.

In light of all these developments we conclude that even if the complaint was insufficient to notify defendant properly before trial there was no prejudice. Defendant was told precisely what the issues were. It was able to present strong evidence in support of its contentions and, most important, it was offered the chance to develop further evidence after the plaintiffs had put on their complete case. What we recently said in *Schroeder v. Schaefer*, 258 Or 444, 477 P2d 720 (1970), 483 P2d 818 (1971), concerning pleadings is equally applicable here:

> "* * * The purpose of pleadings is to give notice of the issues to be litigated so that appropriate defenses can be prepared. Therefore, in a situation in which no surprise or prejudice has been suffered by the opposing party, the unqualified and strict application of the rule in question would seem to be inappropriate. * * *" 92 Adv Sh at 730.

This case is different from *Murray v. Smucker*, 252 Or 469, 450 P2d 545 (1969), in which the jury returned a verdict for defendant in an action to recover for a breach of an earnest money agreement. The basis for the judge's decision was a provision in the agreement authorizing the defendant to cancel if the title holder would not grant a partial release. The defendant made only a general denial and did not plead this defense. We reversed on the grounds it was defendant's duty to notify plaintiff through the pleadings that he intended to rely upon his inability to secure the partial release. In *Murray*, however, the issue was not made known at the beginning of trial and the trial court did not offer plaintiff extra time to develop evidence to avoid the defense once it became apparent the pro-

ceeding was going to include matter somewhat beyond the precise scope of the pleadings. For this reason there was a real possibility of prejudice in *Murray* that was not present in this case. Likewise in the other cases cited by defendant there was a greater risk of prejudice by a variance from the pleadings. Each of those cases was tried to a jury and there was no chance to introduce further evidence after the trial.

5. In addition to seeking damages for the cost of replacing the fixtures, plaintiffs also sought in their claim for waste to recover for damage to the building. The plaintiffs introduced into evidence an estimate of the cost of repairs. Some of these repairs were made and others were not.

On this issue the trial court concluded:

> "In the present case the Court having concluded that the land and buildings have value very considerably in excess of the cost of repair, the cost of repair is a proper measure of damages to be applied to measure defendant's liability for waste."

The defendant contends such a conclusion was in error because the proper measure of damages for injury to a building is the diminution of value of the building resulting from the alleged waste.

This court has approved instructions stating that the measure of damages for waste is diminution of value. *Winans v. Valentine*, 152 Or 462, 468, 54 P2d 106 (1936). We also have held, however, that the proof of such diminution of value can be made by introducing the cost of repairs. *In re Stout's Estate*, 151 Or 411, 423-424, 50 P2d 768, 101 ALR 672 (1935).

We subsequently held in *Ore. Mutual Fire Ins. Co. v. Mathis*, 215 Or 218, 226, 334 P2d 186 (1959):

> "Under the circumstances of this case, where

the cost of repair is far less than the reasonable value of the building, we are of the opinion that justice would be served by permitting plaintiffs to show the monetary cost of putting the building back in the same state of repair as it was prior to injury." 215 Or at 226.

This is the rule stated in 4 Sutherland, Damages (4th ed), 3767, and McCormick, Damages, 483, n 10 (1935).

Either diminution in value or cost of repair can be the appropriate measure. The basis for deciding what rule should apply was stated in *Ore. Mutual Fire Ins. Co. v. Mathis*, supra (215 Or at 224-225):

"It appears that, since the allowance of damages is to award just compensation without enrichment, there is no universal test for determining the value of property injured or destroyed and that the mode and amount of proof must be adapted to the facts of each case. * * *"

Defendant contends cost of repairs was not the appropriate measure in this case for the reason that the repairs were to restore the building to a condition in which it could be used as a night club and experience had proved that it was no longer feasible for night club use; further, that the plaintiffs did not intend to make all the repairs which were estimated to be necessary as they intended, as they subsequently did, to tear down the building. Plaintiffs' evidence, however, was that the repairs estimated were the minimum necessary to restore the building to a condition suitable for bare occupancy. Their evidence also was that the decision to demolish the building was made subsequent to the estimating of the repairs. Apparently, the trial court was persuaded by the plaintiffs' evidence.

If repairing is feasible, that the repairs were not ultimately made does not prevent the owner from securing the estimated cost of repairs as damages. *Bates v. Warrick*, 77 NJL 387, 71 A 1116 (1909).

Under these circumstances the trial court was correct in using the cost of repair of the premises, $15,000, as the proper measure of damages.

6. The final specification of error involves the amount of rent owed by defendant for its use of the premises from April 13 until July 12. The trial court found that a fair rental was $1,000 per month. The defendant contends there was no evidence to support this finding. There was evidence that a fair rental for use of the premises as a night club was $1,700 per month. We conclude that from such evidence the trial court could reason that a fair rental for use of the premises to store defendant's security for three months is $1,000 per month.

7. Plaintiffs' cross-appeal upon this issue contended that the rental should have been the lease rental of $1,700 per month. The consent to assignment provides that if defendant did not operate a night club, "Assignee shall not be liable for rent or for any other obligation of the original tenants or of Ed Lee, Incorporated, on account of said lease, provided, however, that Assignee shall in all events be liable for the fair rental value of such premises, as established by said lease, during any period during which Assignee shall exercise dominion over such premises for any purpose whatever." The consent distinguishes between "rent" and "fair rental value" in the lease; however, the lease does not make such a distinction and provides only for a rental of $1,700 per month.

We find the agreement ambiguous. Under these

circumstances evidence showing the meaning or interpretation of the contract may be admitted and the finder of fact determines the intention of the parties. *Libby Creek Logging, Inc. v. Johnson*, 225 Or 336, 339, 358 P2d 491 (1960). We affirm the trial court's finding that the parties intended a fair rental value to be some amount other than the lease rental of $1,700.

Modified.