HUDSON et ux, *Respondents,*
*v.*
PEAVEY OIL COMPANY, *Appellant.*
(No. 35-738, SC 24642)

566 P2d 175

Larry A. Brisbee, Hillsboro, argued the cause and filed a brief for appellant.

Franklyn N. Brown, Tigard, argued the cause and filed a brief for respondents.

Before Denecke, Chief Justice,* and Holman,* Tongue, Howell, Bryson, Lent and Linde, Justices.

HOWELL, J.

*Denecke, C. J., and Holman, J., did not participate in this decision.

## HOWELL, J.

This is an action for damages for trespass. Defendant appeals from a judgment for plaintiffs, entered after a jury verdict awarding plaintiffs both compensatory and punitive damages. Consistent with the jury's verdict, we will summarize the evidence in the light most favorable to plaintiffs.

Defendant owns and operates a service station next door to property owned by the plaintiffs in Tigard. In January, 1975, it was discovered that one of defendant's underground gasoline storage tanks was leaking and that gasoline was seeping underground onto plaintiff's property. The jury could have found that this seepage had been going on since April, 1974, or longer. Beginning at that time, plaintiffs noticed a strong odor on a portion of their property. At first, it was unidentifiable but later was determined to be that of gasoline. At times the fumes and odor were so strong as to make it difficult or impossible for plaintiffs to use a small office building which was located on that portion of their property. At other times the odor subsided.

There was evidence that in the spring of 1974 plaintiffs inquired of defendant's employees about the possibility of gasoline seepage and were told that defendant was not losing any gasoline from its tanks. There was also evidence from which the jury could find that plaintiffs continued to check with defendant's employees periodically and that defendant's agents were, therefore, aware of the problem plaintiffs were having on their property. Defendant's employees continued to tell plaintiffs that, based on their routine checks of their storage tanks and on their records of sales, defendant was not losing any gasoline from its tanks.

Plaintiffs made many attempts to find the source of the problem and to alleviate it but were unsuccessful. In December, 1974, the odor and fumes became particularly severe. Early in January, 1975, in an attempt

to do something about the problem by improving the drainage on their property, plaintiffs dug a trench along the boundary between their property and that of defendant. Gasoline was then observed flowing in considerable quantities from the direction of defendant's property into the ditch. Defendant was notified and began making intensive checks of its storage tanks. It was soon discovered that one of the tanks leaked 60 gallons of gasoline during a 24-hour period. Defendant thereupon immediately removed and replaced the defective tank.

The disputed issues at trial included both liability and damages. On the issue of liability, the trial court instructed the jury, in effect, that defendant was strictly liable for any damages caused by the seepage of its gasoline onto plaintiffs' property.[1] Defendant excepted to this instruction and to the trial court's refusal to instruct that defendant's liability depended upon a finding of negligence.[2] By appropriate assignments of error, defendant has raised in this court the question of the proper theory of liability.

In *Loe et ux v. Lenhardt et al,* 227 Or 242, 248-49, 362 P2d 312 (1961), we adopted the rule that liability for trespass will not be imposed for an unintentional trespass unless it arises out of defendant's negligence

---

[1]
"I instruct you that whenever there is an intrusion upon a person's land by another, there is a trespass. I further instruct you that this intrusion or trespass may be an intrusion by any substance. If you find that defendant stored gasoline on its premises and if you find that this gasoline flowed or leaked onto the plaintiffs' property, then you will find that a trespass existed. The defendant is liable for any damages which resulted from the trespass."

[2]Defendant requested the following jury instruction:

"I instruct you that any unauthorized entry upon the land of another is a trespass. However, under the facts and circumstances of this case liability may only be placed upon the defendant if you find by a preponderance of the evidence that the defendant was negligent in some particular and that the negligence of the defendant was the proximate cause of the plaintiffs' damage. Accordingly, if you find that the intrusion of the defendant upon the lands of the plaintiffs was accidental and without negligence on the part of the defendant then your verdict should be for the defendant."

or the carrying on of an extrahazardous activity. The instruction given by the trial court was, therefore, proper only if defendant's trespass was either intentional or negligent as a matter of law or if defendant's storage of gasoline constituted an extrahazardous activity.

We have characterized the seepage of water from irrigation canals onto adjoining property as an actionable trespass where the evidence showed that the owner of the canals knew or should have known of the seepage. *Furrer v. Talent Irrigation District,* 258 Or 494, 513, 466 P2d 605 (1971); *Reter v. Talent Irrigation District,* 258 Or 140, 482 P2d 170 (1971). In the present case, however, the evidence would not have justified a ruling that defendant knew or should have known of the gasoline seepage *as a matter of law.* Although there was evidence that plaintiffs repeatedly brought to the attention of the defendant the possibility of some seepage, there was also evidence that until January, 1975, so far as the parties knew, the gasoline on plaintiffs' property might have been coming from other sources, including other service stations which were located nearby. There was also evidence that during this period defendant's normal record-keeping did not disclose any gasoline shortages from its tanks.

In support of the trial court's instruction, plaintiffs rely primarily on the theory that defendant's storage of gasoline was an extrahazardous activity and that defendant was, therefore, strictly liable for the resulting damages. Whether an activity is extrahazardous under the particular circumstances is a question of law for the court. *Loe v. Lenhardt, supra* at 249; *McLane v. Northwest Natural Gas,* 255 Or 324, 327, 467 P2d 635 (1970). In *McLane* we discussed in some detail the concept of strict liability for damages arising out of an extrahazardous, or abnormally dangerous, activity. We placed considerable emphasis on the unusual nature of the activity, considering its location and other circumstances:

"* * * We have come to the conclusion that when an

[ 7 ]

activity is extraordinary, exceptional, or unusual, considering the locality in which it is carried on; when there is a risk of grave harm from such abnormality; and when the risk cannot be eliminated by the exercise of reasonable care, the activity should be classed as abnormally dangerous. * * *

"* * * * *.

"We believe the principal factor which brings the activity within the abnormally dangerous classification is not so much the frequency of miscarriage (although this may be important) as it is the creation of an additional risk to others which cannot be alleviated and which arises from the extraordinary, exceptional, or abnormal nature of the activity. * * *" 255 Or at 328-29.

*See also Reter v. Talent Irrigation District, supra* at 145.

■ There is nothing in the evidence in the present case to indicate that defendant's storage of gasoline in conjunction with the operation of a service station was in any way "extraordinary, exceptional, or unusual" in this location. There were, as we have mentioned, other service stations nearby. Presumably they also stored gasoline on their premises, although there was no evidence of the quantities or of the manner of storage. Moreover, we cannot hold, on the evidence presented, that the risk of seepage cannot be eliminated by the exercise of reasonable care, or that the harm to be anticipated from the underground seepage of gasoline is "grave," as we used the term in *McLane.*[3]

Because the evidence in this case would not justify a ruling that plaintiffs' damages were caused by an abnormally dangerous activity being carried on by defendant, and because it would not permit the determination that defendant's trespass was, as a matter of

_____
[3] *See* 3 Restatement (Second) 34, Torts § 519 (2), which provides that strict liability for harm caused by an abnormally dangerous activity "is limited to the kind of harm, the possibility of which makes the activity abnormally dangerous." We need not consider, therefore, whether the possibility of fire or explosion might make the storage of large quantities of gasoline an abnormally dangerous activity under some circumstances.

[ 8 ]

law, either negligent or intentional, we find that the trial court erred in instructing the jury that defendant was liable for all damages resulting from the seepage of its gasoline onto plaintiffs' land.[4] Defendant is entitled, therefore, to a new trial.

Although what we have said is sufficient to dispose of this case, we will also discuss some of the other assignments of error which raise issues that are likely to arise again on retrial.

■ The question of punitive damages was submitted to the jury over defendant's objection. On retrial, unless the evidence differs substantially, that issue should not be submitted to the jury. The evidence justified, at most, a finding that defendant was negligent in not taking additional steps to discover the leak. Defendant's own records indicated that its tanks were not leaking. Although defendant was made aware that gasoline was coming from somewhere onto its neighbor's property, there was also undisputed evidence that the topography of the area was such that gasoline could have been draining or seeping onto plaintiffs' land from a number of other sources. Therefore, although the evidence was sufficient to show ordinary negligence, there was no showing of any conduct "of a kind that sanctions would tend to prevent," nor was there any "particularly aggravated disregard" of plaintiffs' rights. *Noe v. Kaiser Foundation Hosp.,* 248 Or 420, 425, 435 P2d 306, 27 ALR3d 1268 (1967).

Defendant also contended that the question of general damages should have been withdrawn from the jury because there was no evidence that the damage to plaintiffs' property was "permanent," as alleged in the complaint, and because there was no evidence of the value of the property immediately

---

[4]Plaintiffs, in their complaint, did not allege any negligence on defendant's part. Defendant, however, did not attack the pleading on this ground. There was evidence which would have permitted the jury to find that defendant was negligent in failing to discover the leak in the tank sooner than it did. Defendant did not object to any of this evidence on the ground that it was outside the scope of the pleadings.

[ 9 ]

before and immediately after the trespass so that the jury could apply the proper measure of damages for permanent injury.

■ Permanent injury, in this context, merely describes the kind of injury for which a particular measure of damages is appropriate. A permanent injury to land justifies an award of damages measured by the resulting diminution in the value of the property. *Furrer v. Talent Irrigation District, supra* at 520; *Hanns v. Friedly,* 181 Or 631, 642, 184 P2d 855 (1947); *Huber et ux v. Portland Gas & Coke Co.,* 128 Or 363, 367, 274 P 509 (1929). Temporary injury, or injury which is reasonably susceptible of repair, justifies damages measured by the loss of use or rental value during the period of the injury, or the cost of restoration, or both, depending on the circumstances. *Lemon v. Madden,* 216 Or 539, 546, 340 P2d 977 (1959); *Huber v. Portland Gas & Coke Co., supra* at 367-68. *See also Ore. Mutual Fire Ins. Co. v. Mathis,* 215 Or 218, 226, 334 P2d 186 (1959). Injury to real property need not be permanent in the sense that it will last forever in order to justify the use of the diminution of value measure of damages. It is enough that the injury be of a kind that makes it appropriate to consider the owner's loss in terms of the reduced value of the property rather than in terms of the cost of restoring it to its original condition. Comment *a* to Section 929 of the Restatement of Torts includes the following example:

> "* * * Thus where a pipe line company has wrongfully allowed oil to escape into a field, thereby destroying the fertility of the field for a number of years until the oil evaporates, the owner is entitled to recover for the lessening of the value of the land. Such a condition, though not permanent, would affect the offer of a reasonable purchaser. * * *" 4 Restatement 660, Torts § 929.[5]

---

[5]Section 929 itself does not employ the permanent/temporary dichotomy, but permits the plaintiff to elect between the cost of restoration and the diminution in value, with the condition that under most circumstances the recoverable cost of restoration may not be disproportionate to the diminution in the value which was caused by the trespass. *See* 4 Restatement 661, Torts § 929 and comment *b.*

■ In the present case there was evidence from which the jury could have found that a large quantity of gasoline had seeped onto plaintiffs' land; that while underground the gasoline would evaporate only very slowly; that more rapid evaporation depended on the gasoline being exposed to the air through flowing into drainage ditches and through periodic fluctuations in the water table; and that tests which would determine the scope and severity of the problem with greater accuracy would cost about $10,000. The jury also could have found that there was no practical way, short of removing the affected soil itself, to remedy the problem. There was also evidence that because of the smell of the gasoline plaintiffs were unable, up to the time of trial, to find tenants for a portion of their property and that plaintiffs' office building was possibly uninsurable in its present state. Plaintiffs' expert, although disclaiming any ability to predict accurately, without more data, the length of time the problem would persist, testified to the possibility that it could last from five to ten years.

This evidence was ample to permit the jury to find that the injury to plaintiffs' property was "permanent" in the sense that it could not be repaired or rectified by any practical means, that it was likely to persist for an undetermined but significant period of time, and that the property's value to a prospective purchaser would be significantly affected.

■ For such an injury, the measure of damages is frequently stated to be the difference between the value of the property immediately before the injury and its value immediately afterward. The proper formulation may differ, however, depending upon the circumstances. In *Furrer v. Talent Irrigation District, supra* at 521-22, we held that because the injury to the land was a continuing one, the appropriate measure of damages was the difference at the time of trial between the value of the land without the injury and the value of the land as damaged. This version of the diminished value measure of damages would be appro-

priate in the present case, where both the trespass and its consequences were continuing. Its application is complicated, however, by the fact that plaintiffs, in the summer of 1975, spent $60,000 or more remodeling an existing house on the property into an office building, thus significantly changing the total value of the property between the time of the removal of the faulty gasoline tank and the time of trial.

There was evidence, however, from which the jury could have found that this additional investment was reasonable because prior to the remodeling the gasoline fumes and odor had been confined to an area of the property at some distance from the main building. After the remodeling, however, plaintiffs testified that the gasoline odor penetrated the lower floor of the office building and that, because of the fumes, plaintiffs were unable to find a tenant for that portion of the building. Whether the plaintiffs will be entitled to the difference in value at the time of trial, as in *Furrer,* will depend upon the precise evidence introduced and upon whether the jury finds that plaintiffs acted reasonably in proceeding with the remodeling project in light of the existing gasoline odor and fume problem. If the remodeling was not reasonable under the circumstances, plaintiffs' damages for diminution in value will be limited to the amount the gasoline seepage would have reduced the value of the property had there been no remodeling.

Other assignments of error involve matters that are unlikely to arise in the same manner on retrial and need not be discussed.

Reversed and remanded.