Argued and submitted December 8, 1986, reversed and remanded March 25, Wildish Construction's reconsideration denied May 29, Wayne Barnes' reconsideration denied June 12, both petitions for review allowed July 28, 1987 (303 Or 699)

# MILLERS MUTUAL FIRE INSURANCE COMPANY OF TEXAS,
*Plaintiff,*

*v.*

# WILDISH CONSTRUCTION COMPANY,
*Respondent,*

*and*

# BARNES et ux,
*Appellants.*

(82-4537-J-2; CA A37930)

734 P2d 890

Sidney E. Ainsworth, Ashland, argued the cause for appellants. On the briefs were Thomas M. Sheridan, Jack Davis and Davis, Ainsworth, Pinnock, Davis & Gilstrap, P.C., Ashland.

Michael H. Long, Eugene, argued the cause for respondent. With him on the brief was Flinn, Brown & Roseta, Eugene.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

WARREN, J.

## WARREN, J.

The Millers Mutual Fire Insurance Company (plaintiff) brought this action against Wildish Construction Company (defendant) to recover insurance proceeds paid to defendants Wayne and Cynthia Barnes (the Barneses) for damages caused to their home as a result of defendant's blasting operations. The Barneses were joined as defendants, because they refused to subrogate their claim against defendant to plaintiff. They filed a cross-claim against defendant for damages incurred in excess of the insurance proceeds received from plaintiff.

During trial, plaintiff and defendant reached a settlement, and plaintiff dismissed its claim against defendant. The trial proceeded on the Barneses' claim. At the close of the Barneses' case, defendant moved for a directed verdict on the ground that the proper measure of damages was the diminution in the market value of the property and that they had failed to present legally sufficient evidence under that standard. The trial court dismissed the Barneses' cross-claim with prejudice. On appeal, they claim that the dismissal was error, because the cost of restoring the structure is the proper measure of damages in cases where a homestead is involved. In the alternative, they contend that there was sufficient evidence of the diminution in value of the property. We agree with the latter contention and reverse.

The proper measure of damages in cases arising out of injuries to property was discussed at length in *Huber et ux v. Portland Gas & Coke Co.,* 128 Or 363, 274 P 509 (1929). The court addressed the differing measures, depending on whether the damage to the property is permanent, *i.e.,* beyond repair, or temporary:

> "As to the measure of damages arising out of permanent injuries to realty, the editors of Ruling Case Law set forth this rule:
>
> " 'The proper measure of damages for permanent injury to real property is the diminution in the market value of the property; and if land is taken, or the value thereof totally destroyed, the owner is entitled to recover the actual cash value of the land at the time of the taking or destruction, with legal interest thereon to the time of the trial. Permanency of injury is the proper test for the application of this rule; and

this being so, it is obvious that to warrant its application the act complained of must take a part of, or effect a lasting change in, the realty itself. * * * Usually, depreciation in the value is determined by taking the difference between the value immediately before and that immediately after the injury, and in some jurisdictions, where the injury is continuing and recurrent, the rule as to the measure of damages is the difference between the value of the injured premises before and after each repetition of the wrong.' 8 R. C. L., § 44, 'Damages.'

"* * * * *

"This brings forth the matter of temporary injuries to realty; and, with relation to that matter, we call attention to the following observation by the authority last above noted:

" 'On the question as to the rule of damages for temporary injuries to realty, there are two well defined lines of authority. In many jurisdictions, the rule is that the measure of damages for such an injury is the reasonable cost of repairing the property, with legal interest to the time of the trial, and, in some states, in addition thereto, the depreciation in its rental value or the value of its use during the period sued for, if it be rented out or owned for renting. * * * In many other states, however, the diminution in the rental value of the property is held to be the proper measure of damages for temporary injuries to property, together with such special damages by way of injury to crops or personal property, and permanent injury to the land as may be shown.' 8 R. C. L., § 45, 'Damages.' " 128 Or at 366-68; *see also Ore. Mutual Fire Ins. Co. v. Mathis,* 215 Or 218, 225, 334 P2d 186 (1959); *Hanns v. Friedly,* 181 Or 631, 184 P2d 855 (1947); 22 Am Jur2d 194, *Damages* § 134.

The same distinction was more recently addressed in *Hudson v. Peavey Oil Company,* 279 Or 3, 10, 566 P2d 175 (1977):

"Permanent injury, in this context, merely describes the kind of injury for which a particular measure of damages is appropriate. A permanent injury to land justifies an award of damages measured by the resulting diminution in the value of the property. *Furrer v. Talent Irrigation District, supra,* [258 Or] at 520; *Hanns v. Friedly,* 181 Or 631, 642, 184 P2d 855 (1947); *Huber et ux v. Portland Gas & Coke Co.,* 128 Or 363, 367, 274 P 509 (1929). Temporary injury, or injury which is reasonably susceptible of repair, justifies damages measured by the loss of use or rental value during the period of the injury, or the cost of restoration, or both, depending on the circumstances. *Lemon v. Madden,* 216 Or 539, 546, 340 P2d 977 (1959); *Huber v. Portland Gas & Coke Co., supra* at

367-68. *See also Ore. Mutual Fire Ins. Co. v. Mathis,* 215 Or 218, 226, 334 P2d 186 (1959)."

The Barneses rely on *Hanset v. General Construction Company,* 285 Or 101, 589 P2d 1117 (1979), for the proposition that, when a homestead is injured, the proper measure of damages is the cost of repair or, when applicable, replacement cost. We disagree. In *Hanset,* the plaintiffs' home was damaged by the defendant's blasting operations. At trial, the plaintiffs took the position that the defendant should pay the cost of repairs to the house. They introduced evidence that repair costs would amount to $12,000 but introduced no evidence of the value of the house before and after the blasting. The defendant moved for a directed verdict on the ground that the proper measure of damages was diminution in value. The trial court denied the motion, and the defendant appealed. On appeal, the Supreme Court concluded that the plaintiff was entitled to recover repair costs, even if that exceeded the entire value of the building. It cited 4 Restatement Torts § 929, *comment b* (1939):

> "Even in the absence of value arising from personal use, the reasonable cost of replacing the land in its original position is ordinarily allowable as the measure of recovery. * * * If, however, the cost of replacing the land in its original condition is disproportionate to the diminution in the value of the land caused by the trespass, unless there is a reason personal to the owner for restoring the original condition, damages are measured only by the difference between the value of the land before and after the harm. * * *

> "On the other hand, if a building such as a homestead is used for a purpose personal to the owner, the damages ordinarily include an amount for repairs, even though this might be greater than the entire value of the building." 285 Or at 105-06.

Reliance on *Hanset* in this case is misplaced. The Barneses proceeded to trial on the theory that their house was damaged beyond repair and that they were entitled to damages to cover the cost of constructing a new house. *Hanset,* however, involved the partial destruction of a house, capable of repair. *See* 285 Or at 105. The *Hanset* court did not purport to overturn the general rule that, in cases involving permanent and total destruction, diminution in value is the proper measure. On the contrary, the *Hanset* court expressly

stated that whether the property can be repaired is a factor in determining whether repair costs rather than diminution in value is the proper measure of damages. 285 Or at 105.

Moreover, the Barneses' reliance on 4 Restatement Torts § 929, *comment b* (1939), cited in *Hanset,* is also mistaken. Section 929 is expressly limited to cases not involving the total destruction of property.[1] It provides:

"(1) If one is entitled to a judgment for harm to land resulting from a past invasion and *not amounting to a total destruction of value,* the damages include compensation for

"(a) the difference between the value of the land before the harm and the value after the harm, or at his election in an appropriate case, the cost of restoration that has been or may be reasonably incurred,

"(b) the loss of use of the land, and

"(c) discomfort and annoyance to him as an occupant.

"(2) If a thing attached to the land but severable from it is damaged, he may at his election recover the loss in value to the thing instead of the damage to the land as a whole." (Emphasis supplied.)

Accordingly, although § 929 permits a homeowner to recover repair costs in excess of the diminution in value of the property, it does not allow such a recovery when the property is totally destroyed and, therefore, beyond repair. Under those circumstances, Oregon case law indicates that diminution in value is the proper measure of damages;[2] that is, the home-

---

[1] In examining Section 929 of the Restatement, the Supreme Court has noted:

"Section 929 itself does not employ the permanent/temporary dichotomy, but permits the plaintiff to elect between the cost of restoration and the diminution in value, with the condition that under most circumstances the recoverable cost of restoration may not be disproportionate to the diminution in the value which was caused by the trespass." *Hudson v. Peavey Oil Company,* 279 Or 3, 10 n 5, 566 P2d 175 (1977).

The section, nevertheless, is expressly limited to cases not involving the total destruction of property.

[2] The proper formulation of this measure, however, may vary, depending on the circumstances. When a permanent injury to land is continuing, for example, the appropriate formulation is the difference, at the time of trial, between the value of the land without the injury and the value of the land as damaged. *Hudson v. Peavey Oil Company, supra* n 1, 279 Or at 11. In the present case, the appropriate formulation is the difference between the value of the property immediately before the injury and its value immediately afterward. *See Ore. Mutual Fire Ins. Co. v. Mathis,* 215 Or 218, 224, 334 P2d 186 (1959).

owner recovers the fair market value of the house before it was damaged. Although this result may appear strange, and may appear to benefit the tortfeasor who totally destroys property, it is consistent with the principle that the allowance of damages is to award just compensation without enrichment. *See Ore. Mutual Fire Ins. Co. v. Mathis, supra,* 215 Or at 224.

 When damage to a home is capable of being repaired, as in *Hanset,* it follows that the homeowner should be able to recover those costs from a tortfeasor, regardless of whether the costs exceed the diminution in value. That is based on the assumption that the homeowner wishes to repair the damage so as to remain in his home.[3] When a house is totally destroyed, however, it is no longer possible for the homeowner to remain in that house. Under those circumstances, he is compensated for the loss by requiring the tortfeasor to pay the value of that which he destroyed, *i.e.,* the fair market value of the house at the time of the loss. The homeowner is not entitled, however, to recover damages in excess of what he actually lost, that is, he is not entitled to the value of the old home built new. *Hanset v. General Construction Company, supra,* does not provide otherwise.

 Having determined the proper measure of damages, we turn to whether there is any evidence in the record from which a jury could reasonably determine the diminution in value of the property. *See James v. Carnation Co.,* 278 Or 65, 70, 562 P2d 1192 (1977). At trial, defendant offered evidence that the Barneses filed a proof of loss with plaintiff insurer, claiming that the value of the house before the loss was $168,000 and that the whole amount of the loss was $168,000. Although Mr. Barnes disputed the accuracy of that figure at trial, contending that the house was worth more than $168,000, a jury could have reasonably chosen to disbelieve him and to conclude that the value of the house before being damaged was $168,000 and the value afterward was zero. Additionally, the Barneses introduced expert testimony of the value of the house after the damage. One expert testified that, after the blasting damage, the Barneses' property was worth

---

[3] It is well settled, however, that in partial or temporary damage cases repair need not actually be made in order for the property owner to recover repair costs. The test is whether repair is feasible. *See Johnson v. Northwest Acceptance,* 259 Or 1, 13, 485 P2d 12 (1971).

nothing more than the value of the land. That evidence was sufficient for a jury reasonably to conclude that the diminution in the fair market value of the property was $168,000.

■ Defendant contends, however, that, because the Barneses sought to recover the cost of replacement at trial, they cannot contend on appeal that they produced evidence of the diminution in value of the property. We disagree. Damages for the diminution in value were pled by the Barneses,[4] and the record indicates that there was some evidence of that measure. Although the Barneses were mistaken in their belief that they could recover the cost of replacement, there was sufficient evidence of the diminution in value that a verdict should not have been directed against them. *See Aebischer v. Reidt,* 74 Or App 692, 696, 704 P2d 531, *rev den* 300 Or 332 (1985).

Reversed and remanded.

---

[4] In the Barneses' second amended answer, they cross-claimed for damages in the alternative. They alleged that the cost of replacement of the house is $228,000 and that the diminution in value is $103,000.