Argued October 28, 1958, affirmed June 3, 1959

# LEMON *v.* MADDEN

340 P. 2d 977

540

*Vernon L. Burda,* The Dalles, argued the cause and filed briefs for appellant.

*Wilber Henderson,* Portland, argued the cause and filed briefs for respondent.

Before PERRY,* Chief Justice, and McALLISTER,** SLOAN and O'CONNELL, Justices.

PER CURIAM.

Plaintiff-respondent was the owner of the southwest quarter of section 8, township 1 north, range 22 east of the Willamette meridian in Gilliam County. The quarter was surrounded on the east, south and ·

---

\* Chief Justice when case was argued.
\*\* Chief Justice when decision was rendered.

west by the land of defendant-appellant. The quarter was bisected by a county road which severed the southeasterly 40 acres of the quarter from the remainder. The road crossed the easterly boundary line about one-third of the distance from the southeast corner to the northeast corner. The road then extended in a straight diagonal course and intersected the westerly line at approximately the southwest corner of the quarter. It is with this triangular 40-acre parcel of land that we are concerned.

Prior to April, 1956, the perimeter boundary lines of the quarter had not been fenced. In September, 1955, plaintiff communicated with defendant informing him of plaintiff's intention to establish a line fence. He requested the defendant to share in the expense. The defendant did not agree to plaintiff's request and in November, 1955, the plaintiff caused the justice of the peace in that district to serve notice on defendant, which purported to be in accord with ORS 96.020. This notice directed the defendant to appear on the land in question at a time designated in the notice for the purpose of fixing the location of and method of paying for the erection of such a fence. The defendant failed to accede to the demands of the justice of the peace.

Beginning on April 9, 1956, the plaintiff commenced the building of such a fence. The argument here concerns the fence plaintiff attempted to erect around the 40-acre tract previously described. On April 9, 1956, his employes installed 18 fence posts along the east line of the tract of land. That night the defendant either dug the posts out of the ground or pushed them over with a pickup truck and hauled most of the posts away. The next day plaintiff's employes again installed fence posts and by the next morning the de-

fendant had again removed or destroyed the posts. Over a period of time beginning in April and extending into October plaintiff made six attempts to encircle this tract of land by a fence and in each instance the defendant destroyed the fence. On the last two occasions a substantial length of fence was built and the wire actually strung to the posts. This likewise was destroyed by the defendant and the wire and posts were, for the most part, removed from the area of the fence.

Following the sixth episode the plaintiff filed this action. His complaint alleges that he was the owner of the land in dispute and sets forth six causes of action seeking damages for the destruction of the fence on each of the six occasions. It alleged that the defendant had acted maliciously and sought punitive damages. The defendant, by answer, denied that plaintiff was the owner of the land but admitted he had knocked over certain fence posts. He denied that he had done so maliciously. By an affirmative answer he alleged that this 40-acre tract was his by reason of adverse possession. He sought to quiet title to the land in his name. The affirmative allegation was denied by reply.

The matter came on for trial in due course. On the day set for trial the parties stipulated that the affirmative answer sounded in equity and that the court should try the issue of adverse possession before submitting the issue of damages to the jury. At that time the defendant also interposed an oral demurrer to plaintiff's complaint, contending it did not state facts sufficient to constitute a cause of action. The court overruled the demurrer, heard the evidence submitted on adverse possession, denied defendant that relief and then tried the issue of damages to a jury. The jury

returned a verdict for plaintiff for both general and punitive damages. The trial court entered a decree denying the affirmative allegations of the answer and a judgment in accordance with the verdict. The defendant appeals from each of these determinations. The parties have treated this as two appeals, one from the decree and one from the judgment. Separate abstracts and briefs have been filed in each. We will treat the matter as one case.

■■ In view of the procedure adopted by the parties and the trial court we can assume that the issue of adverse possession is in equity and is, therefore, here de novo. We think it would make no difference if we so consider it or would treat it as an appeal from an action at law. In either case there is no evidence sufficient to raise the slightest possibility of defendant's claim of adverse possession. His entire evidence consisted of his testimony that not more than twice a year some of his sheep grazed upon this land for a few weeks in the spring as they were being herded to summer pasture and upon their return in the fall. Some of his cattle also occasionally wandered onto or across the land. His evidence was corroborated to the extent that some witnesses had seen sheep and cattle on this land as they drove by on the road we have mentioned. It should be noted, however, that these witnesses did not identify the animals as belonging to defendant. Other witnesses were former employes who testified to about the same effect as the defendant. When pointedly asked if he could name a single day that he had been on the land in each of the preceding ten years in question he answered that he did not know. There is no evidence that anyone else knew he was claiming ownership of the land. "* * * the owner must have knowledge of such possession and claim; and such possession

and occupancy is sufficient to put a purchaser from another upon notice, and charge him with knowledge of such claim * * *." *Anderson v. Richards,* 100 Or 641, 648, 198 P 570. Plaintiff had paid all the taxes. Such evidence is insufficient, to say the least, to prove any one of the elements necessary to establish adverse possession by the clear and convincing test required. *Harris v. Southeast Portland Lumber Co.,* 123 Or 549 262 P 243; *Reeves v. Porta,* 173 Or 147, 144 P2d 493.

■ Defendant assigns as error the failure of the trial court to sustain his demurrer. He argues that plaintiff alleged that he was the owner of the land but failed to allege that plaintiff was in possession. He further argues that the complaint failed to specifically allege that plaintiff was either the owner or entitled to the possession of the wire and fence posts; that accordingly the action could be either one for trespass or for conversion of the posts and wire. We think that argument is unsound. "An allegation of title to *or* right to possession of the close is an element which plaintiff must necessarily establish if he would successfully recover." *Denham v. Cuddeback,* 210 Or 485, 489, 311 P2d 1014; *Holladay-Klotz Land Co. v. T. J. Moss Tie Co.,* 79 Mo App 543; 52 Am Jur 856, Trespass § 27. Neither do we find merit in the argument that plaintiff did not specifically allege that he was the owner or in possession of the posts and wire. The allegations that he was the owner of the land and was repeatedly installing posts and wire in the form of a fence thereon is certainly a sufficient allegation of ultimate fact to show dominion over the property. Brown, Personal Property (2d ed), 19ff; ORS 41.360(12). This is an action for trespass to real property. The allegations as to the fence can be taken as identifying the damage inflicted by the trespass. It is incidental to the allegations of trespass to the land. The complaint contains a

"plain and concise" statement of facts constituting a cause of action. *Metropolitan Life Insurance Co. v. Farmers Co-operative Co.,* 68 S Dak 338, 2 NW2d 665, is particularly in point. That court, in answer to the same contention, said: "The ownership of the farm is alleged, and it is further alleged the fence was removed therefrom. By the pleading of these facts, plaintiff has sufficiently alleged an injury or damage to the real estate which it owned." The action was held to be for trespass and not for conversion even though, in that case, the plaintiff alleged the defendant "converted" the fence to its own use.

■ The defendant next assigns that the court should have removed the issue of punitive damages from the jury. We have already related that the fence was destroyed six different times, surreptitiously and defiantly. This clearly presented an issue for the jury to determine the wilful character of defendant's conduct. It should be mentioned that the plaintiff's testimony stands uncontradicted. The defendant presented no evidence, not even the defendant himself. It would be hard to say that defendant was not aware that he was acting wrongfully. To repeatedly destroy the property of another in the nighttime is certainly strong evidence, if not conclusive, of malice and the jury so found.

■ The other assignment challenges the instruction given by the court as to the measure of damages. We will not set forth the entire instruction as the exception taken was "for the reason that the value of these posts is not the basis of damages, although it might be a conversion, it is not acceptable." The court had instructed the jury that in considering damages the jury "shall determine from the evidence offered the value of such posts and the cost of installation; and from

these amounts determine the damage sustained by plaintiff." He further instructed that since the posts and wire had only been installed for a short time the value would be the cost thereof, plus the cost of the labor of installation.

Defendant's present argument is that this failed to enable the jury to deduct from the damages the value of the posts merely knocked down and not carried away and thereby available for re-use. As indicated the plaintiff's evidence was all that was received and his testimony as to the number of posts re-used was not contradicted. It appears obvious that the jury, in reaching its determination, could well have taken this into consideration. The instruction certainly did not prevent it.

■ This was not a permanent injury to the real property and the diminution in value to the property would have been unrealistic as well as not legally applicable. *Huber v. Portland Gas & Coke Co.*, 128 Or 363, 274 P 509. In this instance we believe the court properly considered that the measure of damages should be the cost of restoration. McCormick on Damages 482, § 126.

"We are here concerned with the destruction of a wire fence which may be replaced at will and the value of which may be readily determined apart from the real estate. We think the sound measure of damages for the destruction of property of the nature of that here involved is its value as it stands on the real estate, which may be ascertained by determining the cost of constructing a similar fence or structure * * *." *Metropolitan Life Ins. Co., v. Farmer's Co-operative Co.*, supra, 2 NW2d 665.

Finding no merit in any of the assignments, we affirm the judgment and decree appealed from.